# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARTIN HAGOPIAN,**

       **Plaintiff,**                  **CIVIL ACTION NO. 05-CV-74025-DT**

  vs.

                                        **DISTRICT JUDGE GEORGE CARAM STEEH**

**DAVID SMITH,**                   **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et. al,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Defendants' Motion to Dismiss filed on December 5, 2007 (docket no. 79) be **GRANTED** as to Defendant Kleinhardt and that all claims against her be dismissed without prejudice for failure to exhaust administrative remedies, but **DENIED** as to Defendant CMS, Inc.

**II.**    **REPORT:**

This matter comes before the Court on the Motion to Dismiss filed by Defendants Kleinhardt and CMS, Inc., pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e. Defendants contend that Plaintiff has failed to exhaust his available administrative remedies against them, that Defendant CMS, Inc. is entitled to dismissal because Plaintiff has failed to identify an unconstitutional policy, practice, or procedure of CMS, and that Defendants are entitled to dismissal because they are not liable under Michigan Comp. Laws § 691.1407. (Docket no. 79). Plaintiff has responded to the motion. (Docket no. 83). Defendants have submitted a Reply. (Docket no. 82). The case was referred to the undersigned for all pretrial proceedings. (Docket no. 57). The Court dispenses with oral argument, and the Motion to Dismiss is now ready for ruling.

*A.    Factual Background*

Plaintiff alleges the following in his Complaint. (Docket no. 1). He is a prisoner of the Michigan Department of Corrections (MDOC) who was confined in the Ryan Correctional Facility during the events at issue in this action. Plaintiff alleges that Defendant Kleinhardt is an employee of CMS, Inc., who was assigned to evaluate recommendations from the MDOC physicians regarding referrals for emergent medical treatment. Defendant Kleinhardt was allegedly assigned to work at the Ryan Facility and made decisions with regard to medical treatment, requests, and referrals. Defendant Correctional Medical Services, Inc., "CMS," is a corporation that contracts with the MDOC to provide health and management services.

Plaintiff alleges that in April 2000 an optometrist examined him and found micro aneurysms in his eyes and submitted a Form 407 for referral to an opthalmologist. Form 407 is required by Defendant CMS. These aneurysms are allegedly often associated with hemorrhages that are commonly seen with diabetic macular retinopathy. This referral was denied. In September 2000 Plaintiff again saw an optometrist for the same condition in both eyes. He was again referred to an opthalmologist. The request for referral was not acted upon. In March 2001 Plaintiff was seen by medical staff and again denied "his right to treatment." (Docket no. 1 ¶ 20). Plaintiff complained "every day" to nurses about his pain and suffering because he was not receiving treatment for his eyes. (*Id.* ¶ 21). The nurses gave him aspirin. On June 21, 2001 Defendant Brown forwarded a Form 407 to CMS for review for his immediate treatment. Defendant Kleinhardt denied this request pending a further medical referral report from opthalmologist Dr. Bastgir. Dr. Bastgir examined Plaintiff on July 31, 2001, recognized the need for treatment of both of Plaintiff's eyes, and issued a report authorizing laser surgery on Plaintiff's left eye on an emergent basis.

Dr. Bastgir's report issued on August 3, 2001 and was received by MDOC on August 13, 2001. This report, however, was either not forwarded to Defendant Kleinhardt or was forwarded to her and she denied the request. On August 28, 2001 Defendant Kleinhardt denied the request for referral "indicating it had not received a response to the request for a report from Dr. Bastgir, which had actually been received by the Department of Corrections over two weeks before the denial." (Docket no. 1 ¶ 26). Plaintiff filed a grievance on October 1, 2001. (Grievance no. RRF 01-10-1291-12G, actually dated 10/26/01). Plaintiff in this grievance states that he wants to see an eye specialist. In December 2001 Plaintiff is seen by an opthalmologist who decides that it is too late to save the sight in Plaintiff's left eye, but his right eye needed immediate treatment. On September 10, 2002 Plaintiff filed another grievance to try to save his sight in his right eye. (Grievance no. NRF 02080896 12D). Plaintiff alleges that successful treatment has saved the eyesight in his right eye.

Plaintiff brings claims for deliberate indifference to his serious medical needs under section 1983 against Defendant Kleinhardt and others, but not Defendant CMS. (Docket no. 1 at 13). He brings claims of gross negligence and reckless endangerment against all Defendants. He seeks damages as relief.

B. *Standard of Review*

Defendant has moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dismissal under this rule is appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with Plaintiff's allegations. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In considering this motion, the Court must accept as true the well-pleaded factual allegations in Plaintiff's complaint. (*Id.*). The Court does not have to accept as true legal conclusions or unwarranted factual inferences, however. (*Id.*).

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The prisoner must complete all levels of the grievance process before filing an action in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The Supreme Court recently clarified that proper exhaustion requires a prisoner to comply with state procedural rules such as time limits for filing grievances. *Woodford v. Ngo* 548 U.S. 81 (2006). The two main purposes of the exhaustion requirement are to protect administrative agency authority and to give the agency the opportunity to correct its own mistakes with regard to a program that it administers before it is sued in federal court. *Fazzini v. Northeast Ohio Correctional Facility*, 473 F.3d 229, 232 (6th Cir. 2006).

C.  *Administrative Exhaustion*

Defendants contend that Plaintiff has failed to exhaust his administrative remedies as section 1997e requires against both of them.[1] With respect to grievance no. RRF 01-10-1291 the Step III response which was submitted by Plaintiff shows that it was rejected at that level because Plaintiff delayed three years to appeal to that level. (Docket no. 1, ex. A). The record evidence shows that Plaintiff did not timely appeal to Step III, and that he failed to obtain review of his grievance on that level. Therefore, the Court agrees with Defendants that this grievance does not exhaust any remedies against them. *See Woodford*, 548 U.S. 81. The Court also notes that the substance of this grievance is Plaintiff's complaints about the care he is receiving for his eyes, but he does not mention either

---

[1] This action was previously dismissed for failure to exhaust administrative remedies. The Sixth Circuit remanded the case following the Supreme Court's decision in *Jones v. Bock*, 127 S.Ct. 910 (2007) which rejected this circuit's previous law holding that exhaustion as to all defendants is required and that a failure to name each defendant is *per se* inadequate to exhaust remedies.

Defendant as the cause of any problems or provide any details that would put a reasonable prison official on notice that there is a problem with the acts of these two Defendants.

The other grievance that Plaintiff attached to his Complaint is grievance no. NRF 02-08-0896 12D. (Docket no. 1, ex. B). This grievance is dated August 12, 2002 which would have been after Plaintiff had been told that nothing could be done for his left eye. In this grievance he complains of changes to his right eye and asks to be sent to the Kresge Eye Center (or Institute (KEI)) before he becomes blind in his right eye as well. The Step III response submitted by Plaintiff shows that the MDOC found that his Step III appeal was "extremely untimely." This response states that the record shows that the Step II response was issued on 10-31-02, and Plaintiff's Step III appeal was received on 11-19-02. Defendants argue that this grievance therefore does not exhaust any of Plaintiff's remedies.

The grievance policy relied upon by Defendants states that a Step III appeal "must be sent within ten business days after receiving the Step II response." (Docket no. 79, ex. C, ¶ HH). The record shows that the Step II response was returned to Plaintiff on 10-31-02. The record does not show the date on which Plaintiff received this response, but the Court will assume he received it on the day it was returned, October 31. Ten business days from that day was November 15, 2002 (excluding weekends and the Nov. 11 holiday). Plaintiff dated his Step III appeal November 14, 2002. (Docket no. 79, ex. B). This appeal was apparently received on November 19 according to the Step III response. There is no date stamp verifying this date of receipt, however. The above quoted policy requires that the appeal be "sent" within ten business days. Therefore, the Court finds that the record evidence tends to show that Plaintiff sent his appeal on November 14, one day before the deadline expired. Defendants have not established that Plaintiff's appeal was untimely.

The question remains whether this grievance exhausted his remedies as to either of these Defendants. He does not name either Defendant but under *Jones* that failure alone is not determinative.

-5-

The question is whether the grievance was sufficiently detailed to give the prison the opportunity to correct its alleged mistake. *Fazzini*, 473 F.3d at 232. However, the problem complained of in this grievance is the care Plaintiff is receiving (or not receiving) for his right eye. He recounts in the grievance that the damage to his left eye is done. He knew as of December 2001 that his left eye was beyond help. This grievance is dated in August 2002. It concerns a different problem occurring at a different time from the claims against Defendant Kleinhardt which arose from June to August 2001. Therefore, this grievance does not exhaust any claims against Defendant Kleinhardt.

Defendant CMS stands on different footing. The Step II response for this grievance states that Dr. Derro recommended that Plaintiff be seen at the Kresge Eye Institute, however CMS denied this request.[2] It goes on to say that Dr. Derro is appealing this decision by CMS. Therefore, it is clear that the prison was made aware by this grievance that Plaintiff was complaining about the decision of CMS. The claims against CMS in Plaintiff's Complaint are that the current policies which determine the time frame under which a prisoner receives emergent medical care are unconstitutional. Plaintiff lists the various steps that must be taken before a prisoner receives permission for examination by a specialist. Several of these steps involve CMS such as Form 407 being faxed to CMS, CMS sharing information with MDOC, and then CMS either granting or denying the referral. (Docket no. 1 ¶¶ 67, 68). Therefore, the Court finds that this grievance exhausts claims against Defendant CMS.

Defendants discuss three additional grievances filed by Plaintiff. The first, grievance no. NRF 03-09-1003-12D2 is dated 9/3/03. In this grievance, Plaintiff complains about the time frame in which it takes to see a doctor at the prison. He states that he was sent to Kresge Eye Institute for treatment and that when he came back to the prison he was supposed to see a doctor. However, he is still waiting

---

[2] There is nothing in the record to suggest that Defendant Kleinhardt played any part in this series of denials.

over a month later.  The Step I response states that they are "awaiting CMS approval for offsite to KEI." (Docket no. 79, ex. B).  This grievance therefore adequately put prison officials on notice of a problem with the referral process involving Defendant CMS.  Defendants contend that this grievance was untimely filed at Step I and, therefore, does not exhaust any remedies against them.  However, the record shows that MDOC did not reject the grievance on that basis.  Moreover, the grievance is dated 9/3/03 and the "date of incident" is "on going."  Plaintiff states on the grievance form that he has brought this issue to the attention of health care a number of times including on 9/2/03.  Therefore, Defendants have not established that the Step I grievance was untimely filed.  The Court finds that this grievance was appealed through all three steps, and that it exhausts remedies against Defendant CMS. The grievance does not exhaust any remedies against Defendant Kleinhardt.

The two remaining grievances discussed by Defendants concern a totally different problem: the failure of prison officers to secure property belonging to Plaintiff.  (Grievance nos. NRF 05-12-1581-19e and NRF 05-12-1582-19E).  They do not exhaust any claims against these Defendants.

   D.  *Unconstitutional Policy or Practice of Defendant CMS*

Defendant CMS next argues that it is entitled to be dismissed for failure to state a claim because Plaintiff fails to allege that an unconstitutional policy, practice or procedure of CMS caused Plaintiff's injuries.  (Docket no. 79 at 24-27).  As Defendants contend, Plaintiff may not rely on *respondeat superior* to state a claim against Defendant CMS.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996).  Plaintiff must allege that a policy, procedure, or custom of CMS caused his injuries.  *Monell*, 436 U.S. at 690-91.

This Court previously discussed Plaintiff's claim in his Complaint that the policies and procedures governing an inmate referral for outside health care are unconstitutional because of the time it takes to complete the process.  (Docket no. 1 ¶¶ 65-69).  Defendant CMS attempts to place the

responsibility for these procedures on the MDOC. However, Plaintiff has alleged that Defendant CMS is at least in part responsible. (*Id.*). At this stage of the proceeding the Court must take Plaintiff's allegations as true. *See Morgan*, 829 F.2d at 12. Plaintiff's allegations that Defendant CMS's policies are violating his Eighth Amendment rights are sufficient to survive this motion to dismiss.

E. *Gross Negligence and Mich. Comp. Laws § 691.1407*

Michigan law provides for immunity of governmental employees under some circumstances, including when the conduct does not amount to gross negligence. Mich. Comp. Laws § 691.1407. Plaintiff states that he is claiming a violation of this statute by Defendants. (Docket no. 83 ¶ 19). Defendants argue that they are employed by a private corporation and are not governmental employees. Therefore, they further argue, this statute does not apply to them. They also argue that any ordinary negligence claims are medical malpractice claims and that Plaintiff has not complied with the procedural requirements for such claims under state statutes.

First, these are all state law claims that ultimately may not be addressed by the Court under its supplemental jurisdiction if all federal claims are dismissed. Second, Defendants' argument that they are not entitled to qualified immunity, and that therefore section 691.1407 does not apply to them, suffers from a major problem. In one case that Defendants cite for the proposition that they are not entitled to qualified immunity, the court actually found that a private entity, Lutheran Social Services of Michigan (LSS), was shielded from liability by the doctrine of qualified immunity. *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) ("because of the closely monitored, non-profit interrelationship between the FIA and LSS, we hold that the LSS defendants may assert qualified immunity."). The *Bartell* court examined factors such as the purpose of qualified immunity protection and the nature of the relationship between the state and the putative private party to determine whether qualified immunity was appropriate. This Court at this stage of the proceedings cannot say definitely that Defendant CMS

is not entitled to qualified immunity. That question depends on facts that are not part of the record at this time. Without this determination, Defendants' argument that the statute does not apply to them lacks support.

Moreover, if this statute does not apply to Defendants they simply are not entitled to qualified immunity. They do not contend that Plaintiff would be precluded from asserting a gross negligence claim against them under general tort law. Finally, the Court is not convinced that an ordinary negligence action against Defendants is necessarily a medical malpractice action that triggers the prerequisites to suit identified by Defendants. This decision is based on whether the facts alleged raise issues that are within the common knowledge and experience of a jury or raise questions involving medical judgment. *Dorris v. Detroit Osteopathic Hosp. Corp.,* 594 N.W.2d 455, 465 (Mich. 1999). Issues such as whether the prison procedures in general delay medical treatment to an unconstitutional degree, or whether a particular employee negligently processed a form, do not necessarily raise questions involving medical judgment. Therefore, Defendants' motion to dismiss on this basis should be denied.

## III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

  Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: January 31, 2008        s/ Mona K. Majzoub
                  MONA K. MAJZOUB
                  UNITED STATES MAGISTRATE JUDGE


## **PROOF OF SERVICE**

  I hereby certify that a copy of this Report and Recommendation was served upon Martin Hagopian and Counsel of Record on this date.

Dated: January 31, 2008        s/ Lisa C. Bartlett
                  Courtroom Deputy